0508, people of the state of Illinois, at the lease of Mr. Henry Childs, accompanied by Dr. Mike Thomas Corrales. Mr. Corrales. Good morning. I'm pleased to report, Mr. Community. I'm Tom Corrales from the Office of the State of Health Defender. I represent Henry Childs and his direct appeal from the conviction of criminal sexual assault following the Peoria County jury trial. Now, we've raised one issue in this appeal, and as the court knows, the argument that we've made was not preserved below, either when the error happened or by concluding the claim in the post-trial motion. The record shows, however, that the error took place when just prior to jury selection, the trial judge informed members of the public who were present and who were supporters of the defendant and family members that they could not remain in the courtroom to observe the court and the lawyers conduct jury selection. So the issue in this case is very narrow. Should the error that was admittedly committed by the trial court, who may well have excluded the public from the lawyer simply as a matter of course or for his convenience, should that result in reversal, despite the fact that we've been forced to raise this argument as one of the deceptive moments of the plaintiff's case. Now, the State takes the position that what happened below was nothing more than maybe a baby-sized error, one that was so insignificant on the trial as to be deemed trivial. And as it turns out, the State now has a recent decision in this court which two members of this panel agreed to support this position, and that's the Radford decision. My argument today will be focused on expressing why the outcome of this court's decision in Radford and the recent decision of the United States Supreme Court in Weaver versus Massachusetts should not bar finding that plain universal error occurred in this case. First, I'd like to unpeel a little bit of the recent decision in Radford. Before any determination can be made about whether that decision would be appropriate to apply in another case, it's important to narrow down what that decision says and perhaps what it doesn't say. What I mean is Radford told that the court in that case had committed error, but the defendant failed to overcome the waiver in the trial court by his counsel. It seems as if the majority decision in Radford does say that, it points to the opinion. On the other hand, the Radford decision could be limited to saying that the conduct of the judge there wasn't really error, since the closure was called trivial also within the decision. And this is a distinction that is not trivial. The plain error rule really isn't even implicated when something an appellant maintains was error. It's found by this court to not be error. That's the first stage of the test for plain error, was what was claimed to be erroneous even error to begin with. My reading of Radford is that the majority of the panel in that case found that error took place because there was a partial closure during the hearing in that case, and it was not one that the judge adequately expressed reasons to justify. So under Rule 615A, we had an error, and then the majority went on to decide whether the test for plain error was met. Obviously, the dissent of Radford concluded that error occurred in Radford, but when you look at the decision starting in paragraph 56, it's not as easy to discern what the majority intended. Justice Smith, you wrote the decision. Yeah, you're a little tough on my prose. Well, I'm going to take some quotes out of it. You wrote in paragraph 56 that a public trial violation is subject to the triviality standard, and then that is followed by a quote from the federal decision in Peterson v. Williams that says under the triviality standard, a reviewing court considers whether the lower court's action and the effect that flowed from it deprived the defendant of the protections deferred by the Sixth Amendment. That sounds more like no error under the triviality test, but I think it is more sensible to conclude that all three of the justices who decided Radford thought that error occurred, and that opinion simply diverged on whether a new trial should have resulted as a result of the plain error. And isn't that line of thinking supported by the U.S. Supreme Court's recent decision in Weaver? So, Weaver does not deal with the plain error standard. Weaver deals with a defendant who was forced, by virtue of the fact that the parties during the trial proceedings did not even know about Presley v. Georgia, to wait until years later and bring up the error in the collateral proceeding. Now, even under Arnolino law, if you're proceeding under a post-conviction petition, the plain error rule is off the table. There is a difference between plain error on a direct appeal and having a claim of ineffective assistance of counsel in a years later collateral petition. Clearly, Weaver says that you must show prejudice if you're raising this claim collaterally, not immediately after the trial, because a direct appeal flows fairly quickly after the trial, and as a claim of ineffective assistance, because under strict limit, you have to show prejudice unless you have a Crowley type of error where there was really no representation. We are not laying the trial error here, and we're not in a post-conviction position. We're on a direct appeal. So, if I read Radford correctly, even the majority decision, it simply is not sustainable as a matter of Illinois plain error law, because it suggests that some courtroom closures result in second-pronged plain error, while others would be subject to having a showing of prejudice being required by the defense, and that's really more accurately viewed as the first-pronged test of the plain error standard, one where the evidence has to be shown to be closely balanced and prejudice needs to be shown by the defendant. There simply is no Illinois Supreme Court precedent for that juxtaposition. Well, are we in lockstep with the federal law on the Sixth Amendment? I haven't given that any thought, but I'll assume that for the purposes of the question that we do follow the U.S. Supreme Court's interpretation. Weaver, again, did not control direct appeals. In fact, there's language at the beginning of the decision in Weaver that says that it is still a structural error. So, the underlying constitutional violation has been treated as structural error by this court, an error entitling the defendant to automatic reversal without any inquiry into prejudice. But then the question in Weaver is whether the invalidation of the prediction is required here as well, or if the prejudice inquiries alter where this error is raised in the context of an ineffective assistance of counsel. As I said, we are not raising this as ineffective assistance of counsel. We don't have to raise it as ineffective assistance of counsel. We rely on the second-pronged test because this is an error that is structural in nature. And what do we do with the language out of Weaver that says, however, other than the government's prohibition from arguing an error was harmless, the term structural error carries with it no talismanic significance as a doctrinal matter? My suggestion would be, and I've researched this week trying to see if Weaver has been interpreted on a direct appeal since it came down a year or so ago. I would wait until you see a direct appeal where that language appears again and the court says that we require you to raise this as ineffective assistance of counsel. That is not how we might do it. So it's your position then that Weaver is limited to collateral challenges and is inapplicable to direct appeals? As I argued in the requirement, that's exactly my position. Isn't the error here closure without the requisite findings? Can a trial judge close a courtroom if he makes a good record? I'm sorry, what was the last part? Record? Can't the trial court close a courtroom for certain reasons if he makes a good record? If he makes a good record. And isn't the error here closing the courtroom without findings? Yes. The closure here does not contain any findings or any expression by the court that it considered alternatives to closure. And the Presley v. George decision of the United States Supreme Court makes clear that trial courts are required to consider alternatives to total closure even if none are offered by the parties. Well, this was not a total closure, right? Now, that depends on what your interpretation of total closure. I don't believe total closure means no one's allowed to view the trial from the beginning of voir dire to the end of the verdict. And I would agree with you. But even voir dire, he didn't throw all the public out. He excused the plaintiff's family, right? So is that a total closure? The record doesn't support through silence that other people were in the courtroom. He addressed the members of the public. Our position is that we're present. And there was no indication that the press was present, and he left them in there. He said, now we're going to start voir dire, and Mr. Childs, your family, or whatever, who is that over there, they can't be in here for voir dire. So we maintain that the record does support that this was an exclusion of everybody. And if the state has to decide baseball on that, they can tell us if they know that that wasn't the case. But I don't know that anybody was allowed to remain. And I don't know any reason, actually, why the defendant's family would be singled out for leaving, and anybody else could remain. Well, and, of course, you pointed out that these problems can be solved with a contemporaneous objection, and then it can be worked out on the record. Absolutely, it's not possible to know whether the attorney had made an objection, would Judge Vesta have said, thank you for your objection, it's acknowledged and denied. Clearly one possibility, with no further comment. Or, actually, there's multiple variants. He could have said, I understand, but I'm going to make the findings that I have 40 jurors coming in, and we have the room for exactly 40 people in this courtroom. That also would have resulted in automatic reversal. Or, some other expression would have been expressed that would have been justified under the four-part testament precedent. We're left without that record, and the state has actually offered an alternative, which I find to be a little bit tough for us because it would take an incredible amount of candor if it goes back on our remand for the trial court to tell us, was this a matter of policy, are we just doing this because of the seating? We would accept that if the alternative was going to be you have one opportunity to preserve this issue in the lower court, otherwise the issue is lost forever. Because clearly we would agree that FIFA would not allow us to raise this in a trial petition. This is our one shot. And we find that the plain error rule is adequate to cover that opportunity for relief because it says in the United States Supreme Court case law and in Thompson, the Illinois Supreme Court in 2010, this is a structure of error, not subject to harmless analysis. Harmless error analysis. One minute, or two minutes, I'm sorry. I'll take three. So the Office of the State Development Defender exists to try to create somewhat of a quality control measure, and for decades, by all accounts, our briefs and our arguments have resulted in steady improvements to the manner in which trial law is conducted in the lower courts. The fact that mistakes are likely to happen in any system of justice means that these corrections are possible. And any behavioral scientist will tell you that patterns of unacceptable behavior will begin to change when there are consequences. Patterns will tell you that, too. What we think should happen in this case is what the pressing court unequivocally said is not tolerable, is for a court to just close the courtroom without expressing any reasons, creating a structural error, should cause the consequence that will produce future change, even if the first lawyer who brings this error to Your Honor's attention comes from the Office of the State Development Defender. Otherwise, what we have is a constitutional right that is deemed structural in nature, which is only as good as either the acumen or the zeal of this public defender in the trial court to raise. If he doesn't, it's lost, and it's lost forever. That's not tenable under the plain error analysis. So if there's any point to us reading the records of one year for constitutional errors, to be able to raise them, and to deny some sort of immunity grant to the judges who don't take care to keep proceedings in the courtroom open to the public, I would just repeat what the court said in precedent. The trial court must consider alternatives to total courtroom closure even when none are offered by the parties. That did not happen in Mr. Child's case. It is a clear error revealed by the record, and it is an error that should have a consequence if we still aspire to the concept of facilitating improvements in our criminal justice system by holding people accountable. Mr. Child, would you respect what I said? The consequence to be paid for the misstep in this case is that his conviction be reversed if he receives a good trial. If there are no further questions. Thanks, Mr. Krause. Mr. Genetovic. May it please the court, counsel. Counsel's closing statement presents a very, very, very powerful suggestion to the court about prevailing and ensuring the constitutional rights that injure us all. Being some of the devil's advocate, the flip side of that coin here is what we're dealing with is forfeiture. And the flip side of the coin, from what Mr. Krause and I agree, is the fact that we have a trial judge who makes a statement about holding the courtroom and provides some of the reasons. It would be cruel of any defense attorney not to object. It would be cruel of him not to object because if one were to take and find this to be structural error, and structural error has this charismatic definition to it, there's an automatic reversal. Well, but nothing would stop the prosecutor from objecting and saying, hey, judge, I just want to try this case one time. That would be true. That would be true. But the thing is, in this particular factual scenario, what we have is we have the trial judge closing and the defendant making no objection. Now, is that a tactical decision or not? We don't know. We don't know anything. But the point of the thing is the fact that this case, this case, what I say is it's kind of factually different from Radford. It's factually different from Weaver. It's factually different from a lot of cases that have dealt with this issue because in many situations an objection has been made. So what we're dealing with here is yes, we're dealing with a constitutional right. We're dealing with a constitutional right to a public trial to which the U.S. Supreme Court has said that voir dire encompasses part of the trial. It is part of the fair trial right. So we have that. We have no objection. We have no availability for the opportunity for the trial court to either state why he's closing it or to cure it and to keep it open. We have no indication as to whether or not it was a complete closure. Everybody was kicked out with the denier or were served as a log-in. We have absolutely no record whatsoever. And why did we not have that record? Well, because the trial judge didn't say anything, but there was no objection voiced at that time. Nothing was suggested. So what we have to do here is we have to try to take in turn whether or not under the law's forfeiture rules, whether or not this error is forfeited or whether it is a plain error. Now, the way I read Your Honor's decision in Radford is what the court did first of all is the court first addressed the issue of the matter of whether by their silence the defendant waived his right to a public trial. Waiver, as we all know, is a relinquishment of a known right. Simply being silent does not waive that. What this court basically said is, well, hey, if the defendant had waived it, our analysis would be done. Because at that point, if he waived his right, we wouldn't have to worry about whether it was forfeited, whether it was plain or anything. What the court then did is the court then went on to decide. And I think what the court did is the majority here did find error. But what the majority basically honed in on was the fact that in Weaver, when they said that structural error carried with it no talismanic significance as a doctrinal matter, what this court had to decide was in plain error, second prong. Second prong of plain error basically says, error deprived defendant of a fundamentally fair trial or undermined the integrity of the judicial process. What this court was addressing was whether or not  of these two aspects of second prong. Simply because it was labeled structural error did not lead the majority in New Africa to conclude that it was plain error. This court addressed and looked at what exactly occurred. The fact that the defendant made no argument whatsoever about the fact that it was a non-fair trial, made no argument that there was anything on board about the jury selection process, made no argument about the fact that the prosecutor or the trial judge didn't take the Blagheer seriously. There was absolutely no indication whatsoever that anything that occurred at the Blagheer in Radford during the partial closure did anything to subvert the defendant's right to a fair trial. Nor, because of the fact of what the records showed, was there any indication that the integrity of the judicial process itself was somehow undermined by what the trial judge did. I think that is the nub of what this court did. This court addressed second pronged plain error. Just didn't write a blank check saying, well, because we have a sixth amendment violation, because there was a partial closure, and because the trial judge said this, the trial judge didn't say that. Basically, automatically, if so, jury, we have plain error. That's not what this court did in New Mexico. And so that is what kind of sort of is in this case, is the fact that when you look at it, what we have is, yes, we have a partial closure of Blagheer. Partial closure, members of the public were not allowed during Blagheer. Well, do we even know that? What were the judge's words? He said, your family or whatever. We don't know. But in that opening comment, say it. We have no idea who was or was not allowed in. We have no way of knowing. But the point here is the fact that the defendant tries to separate this case from Weaver, based on the fact that Weaver involved strictly, pretty effectively strictly with it. And I've conceded that point in brief. It's not so much about the factual scenario, per se. But it's the thinking and the reasoning that is behind what the US Supreme Court said it is. And by that, I mean they drew a distinction between deciding a public trial issue like this, when an objection's made and a record's made, versus when there's no objection. That's what we have here. The fact that in Weaver, they basically held that while it is a structural error, the fact of the matter remains that just because you have a closure of jury selection does not necessarily mean that the defendant was denied a fair trial. They come out and they specifically state that. So in that particular situation, we have to have some means by which we try to take the judge whether or not the error here is or is not plain error. Because we have to deal with forfeiture. That is what the issue here is. Is the defendant's failure to object, defendant's failure to include in the post-trial motion, and the fact that we have a silent error. And we have to try to determine was the defendant denied a fair trial. Were any of the interests that the Sixth Amendment protects somehow violated here as a result of this closure? To that, I submit, we look to the record. We look to the transcript of the voir dire in the case. And what we do is we, I think, distort the incumbent conclusion, the reasonable conclusion, that the error here was good. The error here did not deprive the defendant of his right to a fair trial. And so under the rationale, under the thinking, and how this court approached this issue of Ranford, I think it's exactly the same way it needs to approach the issue in this case. And I think that the Supreme Court's statements, albeit in an ineffective assistance of counsel issue, I think nonetheless are just as applicable here and are just as pertinent in this case as they were in Reed v. Weaver. And as a result, we would ask this court to take and affirm the defendant's convictions unless there are any other questions. Well, what do you, counsel makes an argument that Mr. Krause argues that Weaver is limited to the scope to collateral attacks as opposed to direct appeals. And you kind of danced around that or at least, or I wasn't smart enough to figure out exactly your position on that. What say you? I don't think so. And at least, I would not take it in this case obviously because of the fact that this is a direct appeal versus collateral. You would not cite Weaver as a direct opponent. But the thing is, what you have here is the Weaver court said, and I've got a couple of quotes, it would be unconvincing to deem a trial fundamentally unfair just because the judge was willing to announce factual findings before making an otherwise valid decision to order the courtroom temporarily closed. As a result, it would be likewise unconvincing if the court had said that a public trial violation always leads to a fundamentally unfair trial. What were the facts in Weaver? And I should know because I was with Justice Schmidt in Ranford. What were the facts? Was it closure or just voir dire? Or was closure just voir dire in Weaver as well? Right. And so they go on and they say, the court concluded in a discussion by stating these precepts confirm the conclusion the court now reaches that while the public trial right is important for fundamental reasons, in some cases an unlawful closure might take place. An unlawful closure might take place. And yet, the trial still would be fundamentally unfair from a defendant's standpoint. They then go on. And what they do is, and this is the aspect, this is what they have stated that I find pertinent and applicable here, even though procedurally, I don't want to even say factually, procedurally the posture of the case is different, this case from Weaver. The reason for placing the burden on the petitioner in this case, however, derives from both the nature of the error and the difference between a public trial violation preserved and then raised under direct review and a public trial violation raised as an ineffective assistance of comfort claim. As explained above, when a defendant objects to a courtroom closure, the trial court can either order the courtroom open or explain the reasons for keeping it closed. When a defendant first raises a closure in an ineffective assistance claim, however, the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for its closure. In sum, an ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial unless undermined with the finality of jury verdicts. Same here. There's no objection. The trial judge is never given the opportunity to explain or to cure or do anything. And by the defendant not objecting, based on the argument about plain error, plain error, structural error, if so juried, we get a new trial. It basically, what it does is, it basically, as I said at the end here, it basically is a way to escape the rules of waiver and forfeiture and raise issues not presented at trial. That's exactly what we have here. That's the reason why I find Weaver's analysis, albeit presented to the court in a different procedural vehicle than what we have here, is just as applicable to this case as it would be to a collateral remedy type case. Any other questions, Your Honor? Thank you, Your Honor. Mr. Corrales, number 12. Thank you. As it relates to obligation to preserve this issue, I know we attribute the actions of counsel to the defendant, but when I hear that this is all a result of the defendant's failure to raise this issue in a post-trial motion, the defendant's failure to complain at the time it happened, and excusing the trial judge because nobody held him accountable, well, there are four parties involved when this happened. There's the trial judge, there is the prosecutor, there is the public defender, and there is Mr. Childs. Of those, only Mr. Child never went to law school. The judge is the one to know what the law is and to hold the defendant accountable in some cases because he didn't speak, because his lawyers are sitting on his hands. It's an upside-down pyramid in my mind. He is not the one that knows to speak. And to suggest that, one other thing about that is that the defense attorney has the incentive. There are ethics involved in not raising an objection. If he knows it, I think it's more of a case of not knowing that this is the law, that voir dire is part of the trial. And again, the prosecutor, as Justice Smith pointed out, and the trial judge are also present. So not only all falls on the defense lawyer to speak, but actually, if he's waiting, waiting for good, it all falls on the defendant personally. One shot. I agree with you that this is an oversight, that the trial courts don't realize voir dire is part of the trial. Oftentimes, voir dire isn't even taken down by the court reporting of the cares. So I agree with that. But I see there to be competing interests for a defendant. Justice McDade's dissent in Radford discusses that the right to a public trial during the evidentiary portion of a trial discourages perjury because you're testifying in front of the public. But you don't have to be very imaginative with respect to the Me Too movement. This is a sexual assault case or a sex offense case. And the defendant's best interest is to make it easy for potential jurors to disclose whether they or any other member of their family has ever been the victim or accused of this offense. So I think the defendant's interest during voir dire is full disclosure the juror's truthfulness and the interest in the evidentiary portion of the trial for a defendant is don't lie. Don't lie in front of all these people. Do you see a distinction between the two phases here? Well, what I would respond is while there may be less prospects for something untoward to happen during voir dire and there may be an interest that the defendant as attorney discussed personally to not have the public, I would go back to the point that Mr. Yanivick commented on to some extent, and I only did in my open agreement, ask for a waiver of that. Ask the defendant if that's what he wants. I mean, we do this in defendant taking the stand even in the absence of any Supreme Court rule. We have a trial judge routinely say this is what you want to do. Now, we think that's because it may be trying to cut off post-conviction attacks, which seem to come all the time, and my attorney may even do this, and it can cut that off. But if there is anything left for the second problem to put an error, imagine if the judge tells the defendant I'm not letting you testify. You've been a thorn in my side this whole trial, so I'm not going to ask you whether it's your attack that you're not going to get to. And nobody objects, and it's not in the post-trial motion. Now, that's a structural error, too. The defendant has the right to testify. Can you apply it to some overwhelming evidence against them? Why should we bother? I mean, another trial is just going to be guilty, too. So, no, that one is structural error. Well, and that's what I'm wondering. Has Weaver changed the landscape of this notion of structural error? Because it used to be, until Weaver, structural error, reverse. Structural error, easy. I read Weaver more narrowly than Your Honor, simply because it was a collateral case. Another fact that I would give is, yes, Weaver was the Wadier case. But Wadier happened in 2004 and 2005, and Presti firmly established that Wadier was part of the trial from 2010. And, of course, they talk about ineffective assistance of counsel claims on direct appeal, and in Illinois, we generally tell them those cases are better dealt with on collateral attacks so a full record can be made, right? In cases where there seems to be something that could elaborate on the error in the post-conviction. Here, the alternative, Mr. Gnudnik didn't mention it in his time up here, sort of a precursor to a post-conviction so that we won't be stuck with the permanent bar on Weaver is a remand for mid-trial, almost like we used to have with the fitness retrospective finding. Was this justified? In the Shacklin cases. You can create a good record and then we'll have to make an argument on appeal that he's not being truthful. That's why I made the suggestion that it had to be a remand with a different judge, because I've been almost on substitution with judge hearings, and say, what was happening here? If this was just a matter of policy or convenience or oversight, I didn't read Presti, it's only been seven years. Yeah, what if the judge does say, I didn't know? Then where are you after remand? Well, then I think we have structural error admitted and no need for a further preservation of the issue. Let me ask you this, I don't think I saw it in your brief but you point out, in light of this closure, and I understand, how was the defendant's right to a Of course that leads us to speculation and I thought about that. I mean, imagine a situation where there is perjury by one of the veneer members who makes it out to the jury and one of the family members knows that they're lying, but no one else does. One of the family members goes to church with that veneer member and they know that they're relatives of the victim. They're kicked out of the courtroom. They wouldn't communicate it to their son, daughter, relative, defense counsel. They're lying when they say they don't know anybody involved in this case. Well, wouldn't they know that if they came back in and watched the trial and saw that person sitting there in the jury box? That's the response I got when I ran it by my colleagues. And the problem with that is, you require that person to be available for the whole trial. They have one day free. And they have to be here. Maybe it seems like grasping, but there's no way to know. It has to be speculation. And the second part of the plan of error takes away our need to speculate. Consequences that come back to that. It needs to result in something. There is an aspect of the second part of the plan of error that's called the integrity of the judiciary. Where does that lie? If this is not even remanded. This is a past. Judge, we think you blew it. But you're covered because the defendant didn't say something. And the support attorney didn't say something. And nobody can argue an effective assistance now because of me. I mean, I'm looking for some accountability in the process. And I tend to agree with that line of thinking, but then I also think that the U.S. Supreme Court constantly tells us that the criminal defendant is entitled to a fair trial, not a perfect trial. And you weigh those two together, but your point's well taken. You don't want to encourage this. I wish I could have a microphone and an earpiece during every trial and we'd have a little more resources to say  But all I can do is read the record. All right. Thank you, Mr. Krause. Well, thank you both for your arguments here this morning. This matter will be taken under advisement.